# United States Court of Appeals
## For the First Circuit

————————————

No. 99-1797

MIGDALIA NEGRON, IN HER OWN BEHALF AND AS
REPRESENTATIVE OF THE LEGAL PARTNERSHIP;
ALFONSO RUIZ, IN HIS OWN BEHALF AND AS
REPRESENTATIVE OF THE LEGAL PARTNERSHIP;

Plaintiffs, Appellees,

v.

CALEB BRETT U.S.A., INC.,
d/b/a INCHCAPE TESTING SERVICES,

Defendant, Appellant.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gilberto Gierbolini, Senior U.S. District Judge]

————————————

Before

Torruella, Chief Judge,

Selya and Lipez, Circuit Judges.

————————————

John C. Bartenstein, with whom Crystal D. Talley, Ropes & Gray,
Guillermo J. Ramos-Luiña and Rivera, Tulla & Ferrer were on brief, for
appellant.
Godwin Aldarondo-Girald, with whom Angel X. Viera-Vargas was on
brief, for appellees.

————————————

May 24, 2000
_____

**TORRUELLA, Chief Judge.**  At issue in this appeal is the scope of an exception to Puerto Rico Law 80, 29 L.P.R.A. § 185a, which provides the exclusive remedy under Puerto Rico law for an employee who is discharged without just cause.  In Arroyo v. Rattan Specialties, Inc., 117 P.R. Offic. Trans. 49; 117 D.P.R. 35 (P.R. 1986), the Supreme Court of Puerto Rico recognized an exception to Law 80 that applies when an employer's decision to terminate an employee was made in violation of a public policy of constitutional magnitude.

The appellee[1] in this case relied on the Arroyo exception to bring a wrongful discharge action.  After an adverse jury verdict, the appellant brought this appeal arguing that, among other deficiencies in the trial, the district court erred in permitting the appellee's claim to go forward because her discharge did not implicate her right to privacy as guaranteed by the Constitution of the Commonwealth of Puerto Rico and, thus, her claim should have been barred by Law 80.  Because we disagree with the appellant's contention that the Arroyo exception should be read narrowly to preclude the appellee's cause of action, and for the additional reasons discussed more fully below, we affirm the judgment of the district court.

---

[1] There are actually two appellees in this case, Migdalia Negrón and her husband; however, her husband's claim is purely derivative, and thus, we will refer to Migdalia Negrón as if she were the sole plaintiff and appellee.

-3-

## BACKGROUND

Viewed in a light most favorable to appellee Migdalia Negrón, a reasonable jury could have found the following facts. See Consolo v. George, 58 F.3d 791, 792 (1st Cir. 1995); Keisling v. SER-Jobs for Progress, Inc., 19 F.3d 755, 759-60 (1st Cir. 1994).

Negrón is a chemist licensed by the College of Chemists as required under the laws of Puerto Rico, and as such, she is bound by a Code of Professional Ethics. See 20 L.P.R.A. §§ 492(i), 493. A breach of her duties under the Code could result in revocation of her license. See id. § 492(f).

The appellant, Caleb Brett U.S.A., Inc., a Louisiana corporation with its principal place of business in Texas, hired Negrón in 1990 as the laboratory manager of its office in Bayamón, Puerto Rico. Caleb Brett provides inspection and laboratory services to clients engaged in commodity transfers. Clients retain Caleb Brett to independently verify compliance with specifications set forth in the contracts governing the sale of their products. In accordance with Puerto Rico law, see 20 L.P.R.A. § 471q, Negrón would sign and affix her seal to quality certificates to indicate that a product is within the contractual specifications. A sealed certificate would release a bank to pay the seller's contract in accordance with the purchaser's letter of credit. If a product was not within the required

-4-

specifications -- "out of specification" -- the buyer and the seller could either reject the product or renegotiate the price.

Luis Fortuño became Negrón's direct supervisor in 1993, during a period of dramatic increase in the volume of lab work. In addition to the increased workload, the appellee was often under pressure to rerun lab results that were out of specification. The company received complaints from clients when lab results did not meet their expectations. In response, management personnel met with Negrón, but she refused to change or review results that were properly obtained.

During 1993-1994, Miriam Estrada, Fortuño's secretary, altered approximately 500-600 final certificates that had been signed and sealed by Negrón. After the alterations, the certificates were either returned to Fortuño or delivered to clients.

On December 7, 1994, Negrón had a conflict with Norberto Sepúlveda, the Planning and Economics Manager of CAPECO, one of Caleb Brett's largest clients. Negrón refused to change a lab result from 10.53, reported in accordance with the American Society of Testing and Materials method, to 10.5 to conform with the requirements of CAPECO's contract with Vitol. She required that Sepúlveda initial any alteration that he made to the certificate.

On December 15, 1994, Negrón's employment was terminated. Her personnel file does not include any disciplinary actions and shows that she received salary increases each year.

She brought this action against the appellant on November 30, 1995 in the United States District Court for the District of Puerto Rico alleging claims under federal and state law. The district court dismissed the federal claim, but the state law claims went to trial under the district court's diversity jurisdiction. See 28 U.S.C. § 1332. During the trial, Caleb Brett moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). The district court granted the motion in part, but the remaining claims were submitted to the jury. The jury returned a verdict in favor of Negrón. Caleb Brett appeals the district court's denial of its motion for judgment as a matter of law and challenges the validity of the verdict based on the weight of the evidence, the jury instructions, and alleged evidentiary errors made during the course of the trial.

**DISCUSSION**

**I. JUDGMENT AS A MATTER OF LAW**

The appellant argues that the district court erred in denying its Rule 50 motion for judgment as a matter of law for two reasons: (1) the court misconstrued the Arroyo exception to Law 80; and (2) the evidence was insufficient to support Negrón's claim that her dismissal violated her constitutional rights. We review questions of law de

-6-

novo, but review the sufficiency of the evidence drawing all reasonable inferences in favor of the prevailing party.  See Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp., 79 F.3d 182, 188 (1st Cir. 1996).  On review, we will only set aside a jury verdict if the evidence points "so strongly and overwhelmingly" in favor of Caleb Brett that a reasonable jury could reach only one conclusion, namely, that Caleb Bret was entitled to judgment.  Id. (citing Sullivan v. National Football League, 34 F.3d 1091, 1096 (1st Cir. 1994); Gallagher v. Wilton Enters., Inc., 962 F.2d 120, 124-25 (1st Cir. 1992)).

### A.    The Scope of the Arroyo Exception

The first question before us is whether the district court was correct in its determination that Negrón's cause of action for wrongful discharge was not barred by Law 80.  The legislature of Puerto Rico enacted Law 80 to alter the employment-at-will doctrine by providing a statutory remedy for employees terminated without just cause.  Although Law 80 is recognized as the exclusive remedy for a wrongful discharge, it is subject to limited exceptions, only one of which is at issue today, the Arroyo exception.  See generally Arroyo, 117 P.R. Offic. Trans. 49.

In Arroyo, the Supreme Court of Puerto Rico held that Law 80 "cannot operate to deprive the worker of the adequate remedies for effectively vindicating his constitutional rights."  Id. at 76.  Accordingly, the court concluded that dismissal of an employee who

-7-

refused to submit to a polygraph test "subverts a constitutional-ranking public policy." <u>Id.</u> In reaching this determination, the court explicitly relied on section 1 of the Puerto Rico Bill of Rights, which provides, "[t]he dignity of the human being is inviolable . . . ," and section 8, which provides, "[e]very person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life." <u>See</u> <u>id.</u> at 69 (also discussing sections 7 and 16).

Only a few courts have had an opportunity to explore the constitutional policy exception articulated in <u>Arroyo</u>, <u>see</u>, <u>e.g.</u>, <u>In re El San Juan Hotel Corp.</u>, 149 B.R. 263, 273-74 (D.P.R. 1992), <u>aff'd sub nom.</u> <u>Kagan</u> v. <u>El San Juan Hotel & Casino</u>, 7 F.3d 218 (1st Cir. 1993) (unpublished opinion), and the Supreme Court of Puerto Rico did not directly address the scope of the exception again until 1998 in <u>Segarra Hernández</u> v. <u>Royal Bank of Puerto Rico</u>, No. CE-94-499, slip op. offic. trans., 98 J.T.S. 37 (P.R. April 1, 1998). <u>See also</u> <u>Santiago</u> v. <u>Western Digital Caribe, Inc.</u>, No. RE-91-129, slip. op. offic. trans. at 2, 98 J.T.S. 42, at 2 (P.R. Mar. 21, 1996) (referring to <u>Arroyo</u> exception "when the dismissal has the purpose or effect of thwarting or defeating a clear public policy"); <u>Rodríguez</u> v. <u>Pueblo Int'l, Inc.</u>, No. RE-93-125, slip. op. offic. trans. at 9 n.11, 135 D.P.R. 500 (P.R. Mar. 18, 1994) (referring to <u>Arroyo</u> exception "when discharge frustrates or subverts clear public policy, as, for example,

-8-

those which allow the workers to vindicate their constitutional rights"). In Segarra, the constitutional claim amounted to a charge of harassment based on a series of internal transfers and memoranda that the employee deemed offensive. After reviewing the evidence, the court held that her treatment did not rise to the level of a constitutional violation because it did not "involve[] the indiscriminate dissemination of private or personal information," "unreasonably impinge[] on her personal or family tranquility," "disseminate false or slanderous information," or "limit Segarra Hernández's faculty to make decisions about her private or family life." Segarra, slip op. offic. trans. at 12.

Here, the district court relied on both Arroyo and Segarra in determining that Negrón could maintain her cause of action under Puerto Rico law because her discharge implicated a "constitutional ranking public policy." Negrón v. Caleb Brett U.S.A. Inc., No. 95-2478, slip op. at 3-4 (D.P.R. May 19, 1999) [hereinafter Opinion] (citing Arroyo, 117 D.P.R. 35, 65-66; Segarra, 98 J.T.S. 37). The court reasoned that Negrón "was exposed by her employer to a catch 22 situation, that is, either breach her duty under the code of ethics of her profession and run the risk of losing her license . . . or fight for her principles and still loose [sic] her job." Id. at 9. The court then concluded that placing an employee in such a precarious position is "against the constitutional right [as guaranteed by the

-9-

Constitution of Puerto Rico] of every worker to the protection against risks to their personal integrity in the workplace."  Id. at 10.

The appellant contends that the district court improperly construed the constitutional exception, because despite the broad language of Arroyo, subsequent cases, particularly Segarra, have narrowly confined the exception to the core concerns of privacy. However, we find nothing in Segarra that limits the constitutional policy exception in the manner suggested by the appellant.  Quite to the contrary, the Supreme Court discusses the exception in the same broad terms as it did in Arroyo, referring to the "right of privacy" and "personal dignity," and "the right to be protected against attacks on the honor and personal reputation."  Segarra, slip op. offic. trans. at 5-7 (discussing sections 1 and 8 of the Puerto Rico Bill of Rights). To support its position, the appellant makes much of Segarra's discussion of a "zone of individual autonomy" in matters related to personal and family life -- for instance use of birth control, obtaining a divorce, protection from defamatory statements.  Id. at 11-12.  Indeed, the court used those examples, but solely to illustrate the weakness of Segarra's claim; by no means did the court confine the Arroyo exception to those examples.  In fact, the court went on to suggest that under different circumstances a pattern of transfers and internal communications could create a climate of harassment that would violate a worker's constitutional rights, with the caveat that the

-10-

employee must show "that the employer's actions are not related to the normal workplace performance and that they constitute harmful attacks on the plaintiff's dignity and personal or family integrity." Id. at 15.

Applying the reasoning of Segarra to the case at hand, we conclude, consistent with the appellant's concession at oral argument, that a chemist's constitutional rights to privacy and dignity could be implicated if she were pressured to make illegal alterations to lab reports that would jeopardize her license or subject her to civil and criminal liability. Such a scenario would distinguish the appellant from an ordinary whistleblower who is terminated in retaliation for reporting illegal activities of others and has no constitutional protection. See In re San Juan Hotel Corp., 149 B.R. at 273-74 (declining to read Arroyo exception as a general public policy exception to protect whistleblowers).[2] Forcing an employee to choose between her employment and her profession, its code of ethics, and the law, is certainly a matter of personal integrity, and thus, the district court did not err in its legal determination that Negrón's claim is within the constitutional policy exception to Law 80 created

_____

[2] Although the appellant emphasizes that this Court affirmed the district court's judgment, we must clarify that our opinion was unpublished and therefore lacks any precedential value, see 1st Cir. R. 36, and more important, we affirmed on other grounds. Consequently, we take no view as to the validity of El San Juan Hotel's treatment of the Arroyo exception.

-11-

by <u>Arroyo</u>.  Whether Negrón's evidence supports such a claim or shows only that she suffered "[a] mere feeling of uneasiness in the workplace due to some labor-management situation," as the appellant contends, is an entirely different question, to which we will now turn.  <u>Segarra</u>, slip op. offic. trans. at 14.

### B.  <u>The Sufficiency of the Evidence as a Matter of Law</u>

The appellant claims that the evidence is insufficient as a matter of law to establish that the requested alterations were improper or illegal as is required to implicate Negrón's constitutional rights. The appellant hangs its hat on Negrón's testimony, which related primarily to the CAPECO/Vitol report.  There, Negrón had refused to adjust a figure to one decimal point to comply with the contract between the buyer and the seller.  The appellant acknowledges that the alteration may violate the American Standards Manual but argues that it does not rise to the level of a violation of Negrón's constitutional right to privacy and integrity.

We disagree.  Viewing the record in its entirety, we observe ample evidence from which a reasonable jury could infer that Negrón was frequently pressured to alter test results and certificates and that her repeated refusals ultimately resulted in her termination.  Negrón herself testified that beginning in 1993, Fortuño asked her to alter results to conform to specifications mandated in customer's contracts. She explained that an out-of-specification product would have a

-12-

financial impact on Caleb Brett's customers. Although Fortuño testified that he never instructed Negrón to make alterations, his testimony was refuted by his secretary's admission that she altered 500-600 certificates from 1993-1994 and the testimony of Negrón's secretary that she witnessed heated discussions between Fortuño and Negrón regarding customers' preferences. Furthermore, Negrón's husband confirmed that Negrón was distraught about Fortuño's requests, and the former president of the College of Chemists, Dr. Rodulfo Gauthier, testified that Negrón consulted him regarding her ethical dilemma. Gautier testified that a chemist is under a duty to report lab results accurately and he advised Negrón to consult the Board of Ethics, indicating that her license could be affected. Moreover, a reasonable jury could have found that the appellant's proffered reason for terminating Negrón -- that she had performance problems and was difficult to work with -- was pretextual in light of the absence of disciplinary measures in her personnel file, her consistent salary increases, her positive performance evaluations, and testimony from her co-workers. A jury is entitled to weigh the credibility of the witnesses and could infer that Negrón had been asked to do something improper or illegal. See Newell v. Rubbermaid, Inc., 20 F.3d 15, 23 (1st Cir. 1994) (citing United States v. García, 995 F.2d 556, 561 (5th Cir. 1993); Lessee of Ewing v. Burnet, 36 U.S. 41 (1837)).

Because a reasonable jury could find for Negrón on this evidence, we conclude that the district court properly denied the appellant's motion for judgment as a matter of law. See Coastal Fuels, 79 F.3d at 188.

## II.  JURY INSTRUCTIONS

The appellant argues that the jury instructions constituted reversible error because they "required the jury to find that any alteration of laboratory results or reports would have subjected the Plaintiff Negrón to sanction, however legitimate or appropriate those alterations might have been." Appellant's Brief at 42.  The targeted portion of the jury charge provided:  "if you find that Ms. Negrón established by a preponderance of the evidence that her dismissal was in violation of public policy because it was in retaliation for refusing to alter laboratory results, you must find in her favor." The appellant also takes issue with the special verdict form that asked only the following question with respect to liability:  "1. Was Migdalia Negrón's discharge in retaliation for refusing to alter laboratory results and reports?"

However, the appellant failed to timely object to the jury charge and the special verdict form.  Although it contends otherwise in its brief, the appellant's pre-charge objection, articulated for the record subsequent to an in-chambers conference, is inadequate to preserve the issue for appeal for two reasons.  First, it is well

-14-

established that counsel must object immediately after the jury charge and before the jury retires in order to preserve an objection for appeal. See Faigin v. Kelly, 184 F.3d 67, 87 (1st Cir. 1999); Moore v. Murphy, 47 F.3d 8, 11 (1st Cir. 1995); United States v. Nason, 9 F.3d 155, 160 (1st Cir. 1993). In this circuit, we have specifically held that an objection before delivery of the jury charge does not preserve for review issues relating to the charge. See Nason, 9 F.3d at 160-61.

Second, the objection itself was insufficiently specific to satisfy the requirement of Fed. R. Civ. P. 51 that objections must "stat[e] distinctly the matter objected to and the grounds of the objection." The record reflects that the primary objection articulated by the appellant related to an instruction on discovery rights. After the court denied the appellant's request, the following colloquy took place:

> Mr. Ramos: . . . we want to make very clear that the charge as will be submitted to the jury has been the subject of discussion and agreement between counsel. I would like to clarify, however, we insist in our position that no such cause of action exists in Puerto Rico.
>
> The Court: That is a question of law.
>
> Mr. Ramos: Yes, but I don't want this to be construed as any waiver on our part that we have recognized in some phase the existence of some cause of action.

Nothing in counsel's statement articulates the issue now being raised. The appellant did not explain that the proposed jury charge was

-15-

objectionable because it would permit a jury to find for the plaintiff even if the requested alterations to lab results were legal and proper, a circumstance that would not affect her professional status as a licensed chemist and, thus, would not implicate her constitutional rights.

This procedural bar to the appellant's argument was not cured by the appellant's contemporaneous objection to the jury charge. After the court finished charging the jury, the appellant renewed its request for an instruction on discovery rights, and then added, "[l]astly, we are not waiving any rights to contest the fact that we understand there is no cause of action as the jury has been instructed." Again, the appellant failed to identify the issue that it raises on appeal, namely, that the instructions and special verdict form are incorrect because they do not distinguish between proper and improper alterations. It is well established that an objection on one ground does not preserve appellate review of a different ground. See Cambridge Plating Co. v. Napco, Inc., 85 F.3d 752, 766 (1st Cir. 1996). As Caleb Brett fell far short of "stat[ing] distinctly" before the district court the argument it is raising on appeal, it is not preserved. Id. at 767 (quoting Fed. R. Civ. P. 51).

As a result, we can quickly dispose of the appellant's challenge to the jury charge. See Moore, 47 F.3d at 11. Because the appellant failed properly to preserve its objections to both the jury

instruction and the special verdict form, we review for plain error

only.  See Cambridge Plating, 85 F.3d at 767; Nason, 9 F.3d at 160-61;

see also Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 53 (1st

Cir. 1998) (applying same standard to review of special verdict form)

(citing Cambridge Plating, 85 F.3d at 767); Moore, 47 F.3d at 11

(noting that Rule 51 imposes the same duties of diligence with respect

to special verdict forms).  Plain error "'applies only where the error

results in a clear miscarriage of justice or seriously affects the

fairness, integrity or public reputation of judicial proceedings.'"

Cambridge Plating, 85 F.3d at 767 (quoting Clausen v. Sea-3, Inc., 21

F.3d 1181, 1196 (1st Cir. 1994)).  In addition, it is reserved for "the

most egregious circumstances."  Moore, 47 F.3d at 11 (citing Poulin v.

Greer, 18 F.3d 979, 982 (1st Cir. 1994)); see also Nason, 9 F.3d at

160.  In this case, the appellant cannot clear such a high hurdle

because, as we discussed more thoroughly above, there was convincing

evidence adduced at trial from which a reasonable jury could conclude

that Negrón was dismissed because she refused to make illegal or

improper alterations that would jeopardize her chemist's license.

Thus, Caleb Brett cannot show that a miscarriage of justice resulted

from judgment in Negrón's favor.[3]  See Cambridge Plating, 85 F.3d at

---

[3] While the quoted section of the jury instruction arguably blurs the
significance of the distinction between proper and improper
alterations, the preceding paragraphs were adequate to convey to the
jury that the alterations must be against constitutional policy to
impose liability outside of Law 80.  The charge read as follows:

767-68.  Nothing before us suggests that the alleged error "seriously affected the fairness or integrity of the trial" bringing it close to an "exceptional case" which might require reversal.  Moore, 47 F.3d at 11.

## III.  NEW TRIAL

Moving on, we turn to the appellant's final claim that a new trial is warranted because the verdict was against the weight of the evidence and because a litany of evidentiary errors were made during the course of the trial.  We have given due consideration to the appellant's claims and find them to be unpersuasive.  We give them cursory treatment as "our time is best reserved for colorable claims."

---

> Ms. Negrón asserts that her dismissal was in contravention to public policy because it had the effect of frustrating and violating her constitutional rights.
>
> The Bill of Rights of the Constitution of the Commonwealth of Puerto Rico provides that every person has a right of privacy.  This right affords every person the protection to the inviolability of the their dignity and protects them against risks to their personal integrity in the workplace.  These are high ranking, fundamental, constitutional rights enforceable against private individuals. Accordingly, every human being has a right to be compensated for damages proximately caused by an employer who violates them.

Any deficiency in clarity is below the level required to constitute plain error.

-18-

<u>United States</u> v. <u>Bennett</u>, 75 F.3d 40, 49 (1st Cir. 1996); <u>accord</u>
<u>McIntosh</u> v. <u>Antonino</u>, 71 F.3d 29, 37 (1st Cir. 1995).

The appellant's challenge to the weight of the evidence is
little more than a reconfiguration of its sufficiency of the evidence
argument and meets with the same fate. As discussed more thoroughly
above, there was ample evidence to support the jury's verdict in favor
of Negrón. Especially damaging was the testimony of Estrada that
directly contradicted Fortuño's denial that he would ever request
alterations of certificates. Likewise, Negrón's positive employment
history undermined the appellant's proffered reason for her dismissal,
which in turn suggests a pretextual cover for something illegal or
improper.

For similar reasons, the evidentiary errors alleged by the
appellant, if errors at all, were harmless. The appellee's use of the
existing nondisclosure agreement to explain the lack of documentary
evidence to support Estrada's testimony may have been confusing, but we
find no error in the district court's refusal to instruct the jury on
the duty of the plaintiff to discover evidence, as we are aware of no
rule of law that requires the plaintiff to prove her case by
documentary rather than testimonial evidence. Furthermore, any error
on the part of the district court in this vein was not prejudicial.
"[T]he usual assumption that a party would produce documents to
substantiate its claim wherever possible," Appellant's Brief at 49,

-19-

cuts both ways. With or without the instruction, a reasonable jury could easily infer from the defendant's failure to introduce the certificates to impeach Estrada's testimony that the certificates were in fact altered. As for the appellant's argument relating to the improper admission of hearsay evidence, the Carnival Exhibit, and the "testimony" of Negrón's trial counsel, we are not convinced that any of the alleged errors identified by the appellant affected its substantial rights. See Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 102 (1st Cir. 1997).

## CONCLUSION

For the foregoing reasons, judgment in favor of Negrón is affirmed.