# United States Court of Appeals
## For the First Circuit

No. 19-1337

CARLOS MELO,

Plaintiff, Appellant,

v.

CITY OF SOMERVILLE; CHIEF DAVID FALLON, in his official and
individual capacity,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Kayatta, Selya, and Stahl,
Circuit Judges.

Brian Rogal, with whom Rogal & Donnellan, P.C., Timothy M.
Burke, Jared Burke, and Law Offices of Timothy M. Burke were on
brief, for appellant.
Leonard H. Kesten, with whom Deidre Brennan Regan, Michael
Stefanilo, Jr., and Brody, Hardoon, Perkins & Kesten, LLP were on
brief, for appellees.

March 24, 2020

**KAYATTA**, <u>Circuit Judge</u>. Carlos Melo served for nineteen years as a police officer in Somerville, Massachusetts ("Somerville" or "the City"). He claims that the City unlawfully forced him to retire when it discovered that he had essentially no vision in one eye. The district court granted summary judgment to the City, ruling in part that no reasonable jury could find that Melo could perform high-speed "pursuit driving," which the district court deemed to be an essential function of his job. For the following reasons, we find that Melo has raised on this record a triable issue of fact as to whether his monocular vision renders him unqualified to perform the essential job functions of an incumbent officer in Somerville's police department. We therefore vacate the entry of summary judgment.

**I.**

We begin by reviewing the record in the light most favorable to Melo. <u>See</u> <u>Gillen</u> v. <u>Fallon Ambulance Serv., Inc.</u>, 283 F.3d 11, 17 (1st Cir. 2002). Melo began working as a police officer for the City in 1997. In 2002, he suffered an injury that ultimately resulted in a loss of almost all vision in his left eye. Not long after the injury, physicians from the Massachusetts Ear and Eye Infirmary cleared him to return to duty without restriction. In 2007, after serving several years as a patrol officer without incident, he successfully bid for the position of

station officer.  He performed all essential functions asked of him over the years.

During his tenure, Melo twice tested positive for marijuana, requiring him to agree that he either would be or could be fired if he tested positive again.  At some point in 2015, one of Melo's superiors reported that he believed Melo had reported to work smelling of marijuana.  Upon questioning by his captain, Melo admitted that he sometimes smoked marijuana to alleviate migraines that had resulted from his 2002 injury.[1]  He nonetheless contested that the department had reasonable suspicion to order a drug test.  Melo eventually agreed to undergo a fitness-for-duty test in lieu of submitting to a drug test.  The doctor chosen by the City to conduct the examination, Dr. Al Rielly, discovered that Melo has very little vision in his left eye, and Melo was referred to an ophthalmologist, who confirmed that Melo has essentially monocular vision.  Based on that finding, Rielly deemed Melo "unfit for duty" because the impairment would, in Rielly's view, render Melo unable to engage in high-speed pursuit driving.

Following Rielly's reports, the City placed Melo on leave and unpaid suspension, revoked his firearm carry license, sent a notice of potential termination, and initiated involuntary

---

[1]  Melo may have a valid Massachusetts medicinal marijuana license, but this does not seem to have permitted him to use marijuana under department policy.

retirement proceedings with the Somerville Retirement Board ("the Board"). The involuntary retirement proceedings require that a panel of three doctors, appointed by the Public Employee Retirement Administration Commission (PERAC), conduct assessments regarding Melo's fitness to work as a police officer. Two of these doctors concluded that Melo's monocular vision rendered him unable to perform the essential duties of a police officer, noting that the injury limited his depth perception, lowered his field of peripheral vision, and could increase his risk of suffering a debilitating injury, with one of the doctors, Dr. Seth Schonwald, specifically noting the risk this might have on pursuit driving. The third doctor, Dr. Ernest Sutcliffe, directly contradicted those conclusions. He stated that individuals with monocular vision frequently learn to compensate for their injuries. And he cited Melo's regular use of a motorcycle, suggesting that Melo had learned to compensate for his monocular vision in order to safely operate the motorcycle and thus could pursuit drive safely. This doctor nonetheless concluded that Melo was unfit for duty because of his marijuana use, explicitly contradicting one of the other panel doctors, who concluded that Melo's off-duty marijuana use was no bar to his employment.

The panel doctors referred their reports to the Board, which, on January 26, 2017, approved their recommendations that Melo be involuntarily retired. Melo could have contested and/or

appealed this decision but chose not to do so. PERAC then ratified the Board's decision on March 1, 2017. Because the district court was not asked to consider on summary judgment whether the Board's ratified involuntary retirement determination, Melo's initial seeming acceptance of disability retirement benefits, or Melo's marijuana use defeats any of his claims, we do not address these issues on appeal.

In the wake of the City's assertion, based on Rielly's report, that he could not engage in pursuit driving, Melo requested an accommodation of "light duty" work that would presumably exclude pursuit driving, but the City never discussed the possibility of such an accommodation, with Somerville's Chief of Police, defendant David Fallon, later claiming there were no such permanent positions within the department. After filing a charge with the Massachusetts Commission Against Discrimination and the EEOC in October 2017, Melo eventually withdrew those charges and filed this lawsuit in April 2018, alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., the Rehabilitation Act, 29 U.S.C. § 701 et seq., and Massachusetts discrimination law.[2]

The City eventually moved for summary judgment. The parties agreed that Massachusetts discrimination law, the

---

[2] Melo also pleaded a Massachusetts common law claim, the district court's dismissal of which he does not challenge.

Rehabilitation Act, and the ADA all follow the same legal standards relevant to the issues now on appeal. Applying those standards, as framed in ADA cases, the district court granted the motion, concluding that "Melo fail[ed] to make a prima facie showing that he is otherwise qualified to be a police officer because his monocular vision renders him incapable of performing the essential functions of the job." Melo v. City of Somerville, No. CV 18-10786, 2019 WL 1230365, at *3 (D. Mass. Mar. 15, 2019). Melo timely appealed the resulting judgment dismissing his suit.

## II.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when the nonmoving party produces evidence "such that a reasonable jury could resolve the point in [its] favor." Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018) (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23-24 (1st Cir. 2017)). We review a grant of summary judgment de novo. Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, 146 (1st Cir. 2013).

A successful claim under the ADA requires that an individual prove by a preponderance of the evidence that the individual (1) is disabled within the meaning of the ADA, (2) is qualified to perform the job in question, and (3) had an adverse

employment action taken against him or her based on that disability. <u>Laurin</u> v. <u>Providence Hosp.</u>, 150 F.3d 52, 56 (1st Cir. 1998). At issue here is only the second prong, whether Melo is a qualified individual under the ADA, which means that "with or without reasonable accommodation []he was able to perform the 'essential functions' of h[is] former position." <u>Id.</u> Melo contends that a jury could reasonably find on this record, first, that pursuit driving was not an essential job function and/or, second, that he could perform that function. We address each contention in turn.

**A.**

Somerville and the district court have relied for purposes of summary judgment on a manual maintained by the Massachusetts Division of Human Resources ("Mass HRD"). Entitled "Initial-Hire Medical Standards," the manual ("HRD Manual") sets forth medical standards for newly hired police officers in Massachusetts. In relevant part, the manual identifies an inability to see 20/100 or better in either eye as a medical condition that precludes an applicant from satisfying the minimum medical standards required for hire as a municipal police officer. Massachusetts law requires that each municipality within the civil service system adhere to these medical standards. Mass. Gen. Laws ch. 31, § 61A; <u>see</u> <u>Carleton</u> v. <u>Commonwealth</u>, 858 N.E.2d 258, 261 (Mass. 2006).

The manual also contains a list of "municipal police officer essential functions," which includes operating a motor vehicle at a high rate of speed. The City points us to no Massachusetts law requiring that it structure any or all of its municipal police officer job positions to incorporate all of these essential functions listed in the HRD manual. Chief Fallon testified at his deposition that Somerville nevertheless does "use the HRD Civil Service Department . . . . list of essential functions of a police officer."

Pointing to the manual, the district court ruled that no jury could reasonably conclude that a person without sight in one eye was qualified for the job of Somerville police officer. Its basis for doing so was a Massachusetts Supreme Judicial Court pronouncement that courts should defer to the Mass HRD classification of disqualifying medical conditions in fields like policing where "public safety [is] paramount." Melo, 2019 WL 1230365, at *3 (quoting Carleton, 858 N.E.2d at 271).

Notably, though, the Mass HRD Manual only claims to set forth medical standards for initial hires. And while Massachusetts law also calls for the Mass HRD to set medical standards for retaining current officers, Mass. Gen. Laws ch. 31, § 61A, Somerville does not point to any such standards or even claim that they exist. There is good reason, too, to doubt that medical standards for new hires must be applied to remove experienced

- 8 -

officers from service.[3]  After all, why would the Massachusetts legislature have called for the creation of two sets of standards if it expected all officers at all times to satisfy a single set? Officers foreseeably age, losing some physical prowess but acquiring valuable experience and knowledge.  See, e.g., id. (noting that retention standards "shall take into account the age of the police officer").  And while a police department might prefer and expect new hires to be capable of assuming all entry-level positions, experienced officers are much more likely to acquire specific jobs, such as that of station officer.  So Melo's failure to meet the Mass HRD vision standards may not be enough per se to disqualify him after many years of service.

The HRD medical standards thus leave room for the possibility that seeing at least 20/100 in each eye is not a requirement for continued service as a police officer in Somerville.  And this possibility finds proof of the pudding in the eating:  In nineteen years, there has apparently never been an instance in which Melo's vision prevented him from successfully performing his job.  Nor does the City test the vision of its incumbent officers.  In short, there is some evidence in the record

---

[3]  The City does not argue that Melo failed to preserve this argument in the district court.  He clearly presents it on appeal, and the City responds on the merits.  We do the same.

- 9 -

to allow a reasonable jury to find that seeing at least 20/100 in each eye is not a requirement for Melo's job.

As for the "essential functions" list in the HRD Manual, it is not clear whether it purports to describe functions for new hires at the time of appointment or for all officers for the duration of their service. What is clear, though, is that Somerville points us to nothing in either the record or Massachusetts law requiring that Somerville structure the municipal officer positions within its department in accordance with the list in the HRD Manual.

The record, in turn, would allow reasonable jurors to conclude that Somerville has not in fact operated in a manner that makes it essential for every officer to be able to engage in pursuit driving. Discovery showed that Somerville had also created its own list of "Duties and Responsibilities" of a patrol officer. These forty-one listed duties and responsibilities do not include "pursuit driving," although they do include "respond[ing] to emergency situations such as fires, riots, and other disturbances."[4] Somerville similarly requires only rookie officers to take a driver training course, does not otherwise test the high-

---

[4] The record also contains unpublished lists from Chief Fallon and Deputy Chief Stephen Carrabino of station officer duties. Although these include, separately, some driving duties and emergency response duties (like deescalating an incident in the lobby), neither lists pursuit driving.

speed driving skills of its incumbent officers, and actually discourages pursuit driving due to risk of injury in the densely populated Somerville community. When asked if he could recall a specific instance of pursuit driving within the past five years, Chief Fallon stated that he was "not sure it's done often," but he was "sure narcotics ha[d] pursued somebody for a short distance at a high speed," although he could not recall a specific incident. Melo, for his part, has never had to perform pursuit driving in his nineteen years on the force. And the record contains no other evidence that any Somerville officer has ever had the need to engage in pursuit driving, much less while serving as a station officer.

The pertinent legal framework stresses the importance of the foregoing facts: Nothing in the ADA or its implementing regulations suggests that a written job description necessarily controls the determination of what job functions are essential. In fact, we have rejected the notion that such descriptions are always dispositive, even in the emergency worker context. See, e.g., Gillen, 283 F.3d at 25-28 (discussing an EMT's job duties). Rather, the statute and regulations state only that written descriptions are entitled to consideration. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n).[5] Thus, when a record contains conflicting

_____

[5] The other factors to consider are whether "the position exists . . . to perform that function," "[a] limited number of

- 11 -

evidence, resolution of what is an essential element of a job can often be a "fact-intensive inquiry" that may not be appropriate for summary judgment. See Ward v. Mass. Health Research Inst., Inc., 209 F.3d 29, 35 (1st Cir. 2000); cf. Gillen, 283 F.3d at 28. The record as it now stands could therefore support a reasonable finding of fact that binocular vision and ability to engage in pursuit driving are not essential to every police officer job in Somerville.[6] See, e.g., Rorrer v. City of Stow, 743 F.3d 1025, 1041-42 (6th Cir. 2014) (finding a triable issue of fact where it was unclear whether the City of Stow had adopted guidelines listing driving a truck as an essential function of the job of firefighter despite the City's assertions to the contrary).

**B.**

Even if a jury were to find pursuit driving an essential function of policing in Somerville, Melo might still prevail if

---

employees [are] available among whom the performance of that job function can be distributed," and "the incumbent in the position is hired for his or her expertise or ability to perform the particular function." 29 C.F.R. § 1630.2(n)(2). Evidence of these factors include, among other things, "[t]he employer's judgment," "[w]ritten job descriptions," "[t]he amount of time spent on the job performing the function," "[t]he consequences of not requiring the incumbent to perform the function," "[t]he work experience of past incumbents in the job," and "[t]he current work experience of incumbents in similar jobs." Id. § 1630.2(n)(3).

    [6] The district court concluded that the City need not find an accommodation because Melo was not qualified to be an officer. It follows from the foregoing analysis that there is also a triable issue as to whether pursuit driving, to the extent it is ever required of some or many officers, need not be required of a station officer.

the jury also finds that he can perform that function.  It is Melo's burden to show that he satisfies the minimum job requirements.  See EEOC v. Amego, Inc., 110 F.3d 135, 142 (1st Cir. 1997).

The district court relied on Rielly's and the PERAC panel's reports to conclude that Melo's "monocular vision renders him incapable of performing the essential functions of the job" because "[a]ll three independent medical reports prepared for the Somerville Retirement Board, which unanimously voted to approve Melo's involuntary accidental disability application for retirement, similarly determined that Melo was permanently unable to perform the essential functions of his position."  Melo, 2019 WL 1230365, at *3.  But this level of generality does not quite capture the nature of the evidence.  What in fact transpired is that the three panel physicians addressed two different possible reasons for Melo's disqualification:  first, that his monocular vision rendered him unable to perform his essential duties (including pursuit driving), and second, that his use of marijuana rendered him "physically incapable of performing the essential tasks of his job."  As to each possible reason, the doctors split, with at least one physician saying Melo was disqualified for that reason and another saying he was not, albeit all agreed that Melo was not qualified for at least one of the two possible reasons.

- 13 -

Given that neither party now questions the admissibility of any of the three physicians' opinions, it follows that the record contains conflicting competent medical evidence on the questions of whether Melo's vision renders him unable to engage in pursuit driving and whether his marijuana use renders him unfit for duty. Cf. Diefenbach v. Sheridan Transp., 229 F.3d 27, 29 (1st Cir. 2000) (noting that an objection to an expert's testimony under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), can be waived). There is no reason that a jury need resolve the physicians' disagreement by deferring on either issue to the majority vote, especially when the record contains at least some corroborating evidence supporting the other conclusion. Cf., e.g., Snead v. Fla. Agric. & Mech. Univ. Bd. of Trs., 724 F. App'x 842, 846 (11th Cir. 2018); Qidwai v. Prudential Ins. Co. of Am., 56 F. App'x 425, 425-26 (9th Cir. 2003).

This is especially relevant to the vision issue, concerning which Sutcliffe was the only one of the three doctors to consider evidence of Melo's current driving performance and compensatory adaptations; the other physicians relied solely on the results of their eye examinations to conclude that Melo was not qualified. The trier of fact would have the benefit of weighing the doctors' differing decisions based on credibility and other factors that the district court could not weigh on summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255

(1986) (observing that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").  So by presenting Sutcliffe's report -- which accounts for the possibility of individuals with monocular vision learning to compensate for impairments and references Melo's regular use of a motorcycle -- bolstered by his own consistent passing marks in his firearm qualifications and years of work without incident, Melo has presented a triable issue of fact as to whether he can engage safely in pursuit driving.  Cf., e.g., Keith v. Cty. of Oakland, 703 F.3d 918, 926-27 (6th Cir. 2013) (finding a genuine issue of fact as to a lifeguard's qualifications where evidence in the record indicated he may have successfully been able to perform his job even given his hearing loss).

None of this is to say that Melo's marijuana use does not raise additional issues.  But we need not now decide whether that is so.  The City does not argue on appeal -- and did not argue on summary judgment below -- that Melo's marijuana use in fact disqualified him.  Indeed, the letter from Chief Fallon placing Melo on leave and informing him that he cannot perform the essential job functions lists only pursuit driving as a disqualifying issue, as does the application to the Board requesting involuntary retirement, which states that "Melo's

visual impairment interferes with hi[s] safely performing job
duties."

## C.

For the foregoing reasons, we vacate the entry of summary
judgment.  In so doing, we do not hold that this case will
necessarily go to trial or that Melo will ultimately prevail.  The
City claims to have defenses other than those argued to and
addressed by the district court on summary judgment, and nothing
in this opinion rejects or affirms any other defenses it may have.[7]
We rule only that the record as it stands would allow a jury to
find that pursuit driving is not an essential function of Melo's
job and/or that Melo can safely perform that function.

## III.

The grant of summary judgment on the ADA, Rehabilitation
Act, and Massachusetts state discrimination claims is therefore
**vacated**, and we **remand** the case for further proceedings consistent
with this opinion.  The district court will decide at the time of
final judgment whether costs of this appeal are to be shifted in
favor of a finally prevailing party under any applicable statute.

---

[7] For example, in its brief, the City raises arguments
regarding estoppel and timeliness.  The district court did not
pass upon these arguments in the summary judgment proceedings
below.  More importantly, Melo had no reason to develop the summary
judgment record and submissions to parry such defenses.  We
therefore decline to address these arguments in the first instance.
Cf., e.g., Valiente v. Rivera, 966 F.2d 21, 24 n.2 (1st Cir. 1992)
(per curiam).