# United States Court of Appeals
## For the First Circuit

No. 99-1773

UNITED STATES,
Appellee,

v.

PAUL B. RICHARD,
Defendant, Appellant.

No. 99-1774

UNITED STATES,
Appellee,

v.

CATHERINE DUFFY PETIT,
Defendant, Appellant.

No. 99-1776

UNITED STATES,
Appellee,

v.

ROLAND L. MORIN,
Defendant, Appellant.

No. 99-1777

UNITED STATES,
Appellee,

v.

DAVID J. HALL,
Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge.]
[David M. Cohen, U.S. Magistrate Judge]

Before

Torruella, <u>Chief Judge</u>,

Wallace,* <u>Senior Circuit Judge</u>,

and Boudin, <u>Circuit Judge</u>.

<u>Marc W. Griffin</u>, by appointment of the Court, for appellant Paul B. Richard.
<u>Michael A. Tucker</u>, by appointment of the Court, for appellant Catherine Duffy Petit.
<u>David J. Van Dyke</u>, by appointment of the Court, with whom <u>Berman & Simmons, P.A.</u>, was on brief, for appellant Roland L. Morin.
<u>Jennifer A. Appleyard</u>, by appointment of the Court, for appellant David J. Hall.
<u>Margaret D. McGaughey</u>, Assistant U.S. Attorney, with whom <u>Jay P. McCloskey</u>, United States Attorney, was on brief, for appellee.

December 18, 2000

_____
* Of the Ninth Circuit, sitting by designation.

**WALLACE,** <u>Circuit Judge</u>.  Richard, Petit, and Hall (defendants) appeal from their respective convictions and sentences imposed after a jury returned guilty verdicts for conspiracy, bankruptcy fraud, mail fraud, money laundering, and securities fraud in violation of 18 U.S.C. §§ 371, 152, 1314, 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1957, and 15 U.S.C. § 77q.  The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction over these timely filed appeals pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We affirm.

I

Between 1989 and 1997, Catherine Duffy Petit, Paul Richard, David Hall, and several associates participated in a multifarious criminal scheme pivoting around an effort to finance Petit's multi-million dollar civil lawsuit against Key Bank of Maine (Key Bank) and the law firm of Bernstein, Shur, Sawyer and Nelson (Bernstein Shur).

In the late 1980's Petit became involved in a series of legal battles with Key Bank and her former attorneys, Bernstein Shur. In 1989 Petit persuaded Thomas Blackburn, a Maine attorney, to assist her in raising money to maintain her lawsuit against Key Bank and Bernstein Shur, and to pay her living expenses.  Blackburn began

locating investors willing to purchase stakes in the outcome of the litigation. Investors were told that the lawsuit was a "sure thing" and were promised that payments would be made when the case was settled. In addition, they were told that the investments were backed by a multi-million dollar escrow account. In return for their investment, investors were given assignments, signed by Petit and witnessed by Blackburn, that agreed to pay up to double the investment, plus 18% of the lawsuit proceeds, usually within six months of the investment.

In October 1990, Bernstein Shur settled with Petit. The lawsuit continued against Key Bank. The settlement was used by Petit and Blackburn to entice yet more investors, and, between 1990 and 1995, Petit and Blackburn expanded the scheme, recruiting several individuals to enlarge its fund-raising capacity. Petit and her associates continued to raise money even after the last remaining count of the lawsuit was dismissed in May of 1995. The dismissal of the lawsuit was never divulged to the investors. After the lawsuit was dismissed, Blackburn extricated himself from the operation. He had helped Petit raise approximately $4.2 million.

During this period, Richard played an important and versatile role in the operation, acting variously as Petit's companion, liaison, and enforcer, among other things. He arranged meetings, subdued anxious investors, and threatened Blackburn when he

-4-

announced his desire to withdraw.

The scheme broadened in 1993 to include further criminal conduct when Petit was forced into Chapter 7 involuntary bankruptcy (later converted into Chapter 11) by creditors unrelated to the instant case. Maintaining that the lawsuit was her only asset, Petit directed Richard and two other associates to set up a dummy corporation, HER, Inc., with which to conceal assets from the bankruptcy court. During the course of the bankruptcy proceedings, Petit falsely denied receiving any income from the sale of her interest in the litigation, and she and her associates acted to conceal assets from the bankruptcy court, the trustee, and her creditors in the bankruptcy proceedings, primarily through the use of HER, Inc.

In late 1994, David Hall, a licensed broker-dealer for Sun Life Assurance of Canada, joined the scheme, soliciting funds from several of his clients, many of whom were elderly. Arguing that their Sun Life investments were not performing adequately, Hall suggested a risk-free, high-interest alternative. He specifically told two investors that the investment was in Petit's lawsuit, which he asserted was secured by a large escrow account. He informed neither of them that Petit was in bankruptcy, nor did he inform them of the lawsuit's dismissal in 1995. As Hall solicited more investors, he became yet more duplicitous, often asserting that the

investment was in real estate.  Hall forwarded the funds he received from investors to HER, Inc., via Richard and other associates, keeping a percentage for himself.

The fund-raising and money laundering scheme continued until 1997, when a Maine state investigation into HER, Inc. led to the arrests of Petit and several of her associates.  The operation had raised over $8 million between 1989 and 1997, the bulk of which was used to finance Petit's profligate lifestyle.

A federal grand jury in the District of Maine indicted defendants for a multitude of offenses.  Count 1 charged Petit, Richard, and Hall with conspiracy to commit bankruptcy fraud, mail fraud, money laundering, and securities fraud in violation of 18 U.S.C. §§ 371 and 2.  Counts 2 through 13 charged them with bankruptcy fraud in violation of 18 U.S.C. §§ 152 and 2.  Counts 14 through 26 charged them with mail fraud in violation of 18 U.S.C. §§ 1314 and 2.  Counts 27 through 47 charged them with money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A) and 2.  Counts 48 through 62 charged them with money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.  Counts 63 through 75 charged them with money laundering in violation of 18 U.S.C. §§ 1957 and 2.  Counts 76 through 87 charged them with securities fraud in violation of 15 U.S.C. § 77q and 18 U.S.C. § 2.  Count 88 alleged criminal forfeiture pursuant to 18 U.S.C. §§ 1956(a)(1), 1957, 982, and 2.

-6-

At the end of the government's case at trial, each of the defendants moved for a judgment of acquittal, which were granted on Counts 10, 15, 20, 23 through 26, and 86 of the indictment. The court also granted a judgment of acquittal with respect to Hall on the bankruptcy fraud counts (Counts 2 through 13, and Counts 27 through 62). Motions directed at other counts were denied. The jury found Petit guilty on all counts submitted to them (Counts 1, 2-3, 5-9, 11-13, 14, 16-19, 21-22, 27-85, 87). They found Richard guilty on Count 1 (conspiracy), Counts 2, 4, and 9 through 13 (bankruptcy fraud), but not guilty on Count 7 (bankruptcy fraud). He was found guilty of all remaining mail fraud, money laundering and securities fraud counts (Counts 14, 16 through 19, 21, 22, 27 through 85, and 87). The jury found Hall guilty of conspiracy (Count 1), three counts of mail fraud (Count 16, 17, and 19), five counts of money laundering (Counts 65, 68, 71, 72, and 74), and ten counts of securities fraud (Counts 76 through 85). He was found not guilty of four counts of mail fraud (Counts 14, 18, 21, and 22), eight counts of money laundering (Counts 63, 64, 66, 67, 69, 70, 73, and 75), and one count of securities fraud (Count 87).

Each defendant submitted a Rule 29 motion for judgment of acquittal on several counts and the court acquitted defendants on the money laundering charges alleged in Counts 48 through 53, 55 through 57, 59 through 67, 69 through 71, and 73 through 75.

-7-

We first address Hall's contentions. He argues that the district court erred in denying his Rule 29 motion for a judgment of acquittal of the remaining money laundering counts in violation of 18 U.S.C. § 1957. He alleges that the government failed to prove all of the elements of an 18 U.S.C. § 1957(a) offense. Pursuant to section 1957(a), the government must show that Hall (1) knowingly engaged or attempted to engage in a monetary transaction (2) in criminally derived property (3) of a value greater than $10,000, and (4) derived from specified unlawful activity. First, Hall argues that the government did not prove that he engaged in a monetary transaction. Second, he argues that his acquittal on all bankruptcy fraud counts requires an acquittal on all money laundering counts because the money laundering counts listed bankruptcy fraud as the specified underlying offense. Third, he contends that the funds he received from his investors and transferred to his associates were not the proceeds of the bankruptcy fraud at the time of the transfer and, therefore, were not criminally derived property at the time of Hall's transfers.

"The denial of a Rule 29 motion for judgment of acquittal is reviewed de novo to determine whether any rational factfinder could have found that the evidence presented at trial, together with all reasonable inferences, viewed in the light most favorable to the

-8-

government, established each element of the particular offense beyond a reasonable doubt."  United States v. Gabriele, 63 F.3d 61, 67 (1st Cir. 1995).

A.

Hall's first argument raises a discrete question of statutory interpretation:  whether the delivery or transfer of a check, which is the proceeds of unlawful activity, to another person is a monetary transaction within the meaning of section 1957(a).  The government argues that a "monetary transaction" occurred every time Hall received a check from an investor and handed it over to a co-conspirator, who, in turn, would deposit the check into the HER, Inc. bank account.  In reply, Hall contends that he did not engage in any "monetary transactions" because the transactions he engaged in were transfers to persons and not deposits into a financial institution.

The term "monetary transaction" is defined in section 1957(f)(1) as:

> . . . the deposit, withdrawal, transfer, or exchange, in or affecting interstate commerce or foreign commerce, of funds or a monetary instrument (as defined in section 1956(c)(5) of this title) by, through, or to a financial institution  . . . including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title . . . "

18 U.S.C. § 1957(f)(1).  Section 1956(c)(4)(B) defines "financial transaction" as "a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate commerce in any way or degree."  18 U.S.C. § 1956(c)(4)(B).  The term "monetary instrument" is defined in section 1956(c)(5), and includes "currency of the United States," "personal checks," and "bank checks."  18 U.S.C. § 1956(c)(5).

We interpret these provisions to mean that giving criminally derived checks to a co-conspirator, who deposits them into a bank account, is a transfer to, and involves the use of, a financial institution, which satisfies the definition of "monetary transaction" in section 1957(f)(1).  Further, transferring funds to a co-conspirator involves monetary instruments, namely the currency or checks  involved, which satisfies section 1956(c)(5).

In this case, there was sufficient evidence for a jury to find that Hall accepted checks, known to him to be derived from unlawful activity, exercised control over them, and transferred them to associates for the very purpose of having them deposit the checks into a bank account.  Thus, a jury could conclude from the evidence presented, when viewed in the light most favorable to the government, that the conduct alleged in the indictment constitutes a monetary transaction under 18 U.S.C. § 1957(a).

B.

-10-

Hall next contends that he cannot be convicted of 18 U.S.C. § 1957(a) because he was not convicted of bankruptcy fraud, the underlying offense listed in the section 1957 monetary transaction counts in the indictment. He maintains that because the jury acquitted him of the offense by which he allegedly obtained the money, there was no criminally derived property and, thus, no violation.

The Eighth Circuit has held that "the fact that the jury did not convict [defendant] on the relevant underlying . . . charges does not undermine the money-laundering convictions . . . . The only relevant question when reconciling inconsistent verdicts . . . is whether there was enough evidence presented to support the conviction." United States v. Whatley, 133 F.3d 601, 605-606 (8th Cir. 1998); see also McIntosh v. United States 2000 WL 1206564, at *4 (S.D. Ind. 2000) ("Even where the government formally charges the money laundering defendant with a separate offense constituting the 'specified unlawful activity,' acquittal on the underlying charge does not necessarily defeat the money laundering charge."). We are persuaded that the Eighth Circuit states the correct rule. Inconsistent verdicts "do[] not indicate that the government necessarily failed to prove an essential element of its case beyond a reasonable doubt." United States v. Sullivan 85 F.3d 743, 747 (1st Cir. 1996) quoting United States v. Calderon, 77 F.3d 6, 10 (1st Cir.

-11-

1996). On their own, inconsistent verdicts are not sufficient grounds for reversing a criminal conviction as long as the appellate court is satisfied that there was sufficient evidence present to support the conviction. <u>Id</u>. A jury may acquit a defendant as to one or more charges for any number of reasons, and yet come to the reasonable conclusion that the defendant was guilty of other related charges. <u>United States</u> v. <u>Powell</u>, 469 U.S. 57, 64-65, 105 S.Ct. 471, 476-477 (1984).

Furthermore, a conviction pursuant to 18 U.S.C. § 1957(a) does not require proof that the defendant committed the specified predicate offense, <u>United States</u> v. <u>Smith</u>, 46 F.3d 1223, 1234 (1st Cir. 1995); it merely requires proof that the monetary transaction constituted the proceeds of a predicate offense. <u>United States</u> v. <u>Mankarious</u>, 151 F.3d 694, 703 (7th Cir. 1998). Moreover, while "[a] defendant may not be convicted under section 1957(a) unless he knew that the transaction involved 'criminally derived' property . . . he need not have known that the subject property was derived from 'specified unlawful activity.'" <u>Gabriele</u>, 63 F.3d at 65 (citations omitted). Since a monetary transaction conviction does not require proof of a specific offense, nor that Hall knew that the subject property was derived from specified unlawful activity, Hall's acquittal of the bankruptcy fraud charges did not have any effect on his monetary transaction convictions. <u>See</u> <u>Mankarious</u>, 151 F.3d at

703.

## C.

Hall attacks his section 1957 convictions from yet another angle. He contends that, under United States v. Johnson, 971 F.2d 562, 368-70 (10th Cir. 1992), the underlying act of bankruptcy fraud must be "complete" before a violation can occur, and that bankruptcy fraud was not "complete" when he transferred money to his associates. He, thus, argues that the funds he transferred did not constitute the proceeds of bankruptcy fraud – the specified unlawful activity listed in the monetary transaction charge –  at the time of the transfers and, therefore, were not "criminally derived property" pursuant to 18 U.S.C. § 1957(f)(2).  Section 1957(f)(2) defines "criminally derived property" as "any property constituting, or derived from, proceeds obtained from a criminal offense."  A defendant may not be convicted under section 1957(a) unless he knew that the transaction involved "criminally derived" property, but he need not know that the property was derived from the "specified unlawful activity."  18 U.S.C. § 1957(c).  In other words, the government must prove (1) that Hall had general knowledge of the subject property's criminal nature, and (2) that the property, in fact, was derived from a specified offense listed in 18 U.S.C. § 1956(c)(7).  18 U.S.C. § 1957(f)(3).  The government need not prove that Hall had knowledge of the specified offense, or that he committed it.

-13-

Based upon Hall's convictions of both mail fraud and securities fraud, it is clear that he had sufficient knowledge that the money he received from his investors – the subject property – was criminally derived.  Each check he received from his victims was the product of his unlawful activities.  Thus, it is evident that the monetary transactions Hall engaged in were "in criminally derived property," and that he had knowledge of that fact.

However, the gravamen of Hall's argument is that the subject property was not derived from bankruptcy fraud, which was the specified predicate offense listed in the money laundering and monetary transaction counts of the indictment (mail fraud and securities fraud were not listed).  Hall argues that the subject property did not constitute criminally derived proceeds because the bankruptcy fraud was not complete when he transferred the money to his associates.  He alleges that the bankruptcy fraud was not complete until the funds were deposited into the HER, Inc. bank account.  According to this argument, the predicate act of bankruptcy fraud must be "complete" before a section 1957 violation can occur.  For this proposition he relies on a Tenth Circuit case, United States v. Johnson.  971 F.2d at 569-570.

Johnson is distinguishable from the case before us, however.  Johnson involved the laundering of funds derived from wire fraud.  The court concluded that the defendant could not have engaged

-14-

in a transaction in criminally derived property because he did not possess the proceeds of the wire fraud until after the completion of the wire transfer.  <u>Id.</u>  That is, the only use of wires in <u>Johnson</u> to prove the predicate wire fraud were the very transfers that allegedly involved "criminally derived property" under 18 U.S.C. § 1957(a).  Thus, when the court in  <u>Johnson</u> used the language of time to describe the relationship between the money laundering and the predicate offense, "it really was just worried about the definition of proceeds."  <u>See</u> <u>Mankarious</u>, 151 F.3d at 704-705.  As the 10th Circuit explained in <u>Johnson</u>, money laundering criminalizes a transaction in proceeds, not the transaction that creates the proceeds.  971 F.2d at 570.  Thus, "the laundering of funds cannot occur in the same transaction through which those funds first became tainted by crime."  <u>United States</u> v. <u>Butler</u>, 211 F.3d 826, 830 (4th Cir. 2000).

This law does not assist Hall, however.  Although 18 U.S.C. § 1957 does not define when money becomes "proceeds," the Third and Fourth Circuits have held that "proceeds are derived from an already completed offense, *or a completed phase of an ongoing offense*."  <u>United States</u> v. <u>Conley</u>, 37 F.3d 970, 980 (3rd Cir. 1994) (emphasis added); <u>Butler</u>, 211 F.3d at 829; <u>see also</u> <u>Mankarious</u>, 151 F.3d at 705 (explaining that a fraud scheme can produce proceeds long before the act that ultimately triggers federal jurisdiction).  At

-15-

trial, the government introduced sufficient evidence from which a jury could conclude that the receipt of checks by Hall from his investors constituted a completed phase of bankruptcy fraud. Hall was recruited to join Petit's fund-raising operation in 1994, after the bankruptcy fraud phase of the scheme had begun. After Petit entered into bankruptcy in 1993, she and her associates immediately began concealing all financial transactions relating to her lone listed asset, the Key Bank lawsuit, from the bankruptcy trustee. Thus, a jury could find from the evidence presented that Petit and her associates engaged in the concealment of assets from the bankruptcy trustee immediately upon receipt of the checks by Hall, and that Hall's acceptance of the checks constituted a completed phase in the ongoing bankruptcy fraud.

In this case, the defendants' fraudulent scheme generated proceeds, and then Hall committed separate acts to launder the proceeds after he took them into his possession. As the Seventh Circuit held in Mankarious, "[b]ecause . . . money laundering does not focus on the specifics of the predicate offense, it does not matter when all the acts constituting the predicate offense take place. It matters only that the predicate offense has produced proceeds in transactions distinct from those transactions allegedly constituting money laundering." 151 F.3d at 706. Thus, the district court properly denied Hall's Rule 29 motion of acquittal for section

-16-

1957(a) money laundering.

III

Defendants Petit and Richard contend that the district court's imposition of attorneys' fees in their respective restitution orders was erroneous. Petit's and Richard's presentence reports recommended restitution in the amount of $7,999,005 pursuant to 18 U.S.C. § 3663A and U.S.S.G. § 5E1.1. This amount included $355,903 for legal fees expended by the victims. Both Petit and Richard objected to the $7,999,005 total at sentencing, but did not specifically object to the imposition of attorneys' fees. On appeal, Petit and Richard contend that the inclusion of attorneys' fees pursuant to 18 U.S.C. § 3663A constitutes error and, therefore, must be reversed.

The government contends that because they did not specifically object to the inclusion of attorneys' fees, they did not preserve the issue for appellate review. In addition, the government contends that the imposition of attorneys' fees in the restitution orders was proper pursuant to 18 U.S.C. § 3663A because the victims' legal expenses were losses reasonably foreseeable.

Because the record on appeal reflects that the defendants did not specifically object to the inclusion of attorneys' fees, our review is for plain error. United States v. Phaneuf, 91 F.3d 255,

264 (1st Cir. 1996). Under the plain error standard we will review for particularly "egregious" or "obvious" legal error, Negron v. Caleb Brett U.S.A., Inc., 212 F.3d 666, 672 (1st Cir. 2000); United States v. Merric, 166 F.3d 406, 409 (1st Cir. 1999), which our failure to consider would result in a "miscarriage of justice" or would seriously affect the "fairness, integrity or public reputation of judicial proceedings." Negron 212 F.3d at 672, quoting Cambridge Plating Co. v. Napco, Inc., 85 F.3d 752, 767 (1st Cir. 1996).

Petit and Richard were sentenced and ordered to pay restitution pursuant to 18 U.S.C. §§ 3663A and 3664 (the Mandatory Victim Restitution Act of 1996) (the Act). Congress amended 18 U.S.C. § 3663 (the Victim and Witness Protection Act) in 1996 in an effort to guarantee restitution to the victims of criminal conduct. Under the Act, a district court must order the payment of restitution in the full amount of the victim's loss without considering the defendant's ability to pay. 18 U.S.C. §§ 3663A and 3664(f)(1)(A).

In cases where restitution is ordered for offenses resulting in the loss of property, section 3663A(b)(1) provides that the district court shall require defendants to pay victims an amount equal to (1) the greater of (a) the value of the property on the date of the damage, loss, or destruction; or (b) the value of the property on the date of sentencing, less (2) the value of any part of the property that is returned. 18 U.S.C. § 3663A(b)(1)(B). The language

-18-

contained in this provision is identical to the language in the prior provision, 18 U.S.C. § 3663(b)(1), with the exception of the use of "shall" in place of "may," thereby obviating the district court's discretion.

A majority of the circuits have held that restitution under section 3663(b)(1) cannot include consequential damages. Government of Virgin Islands v, Davis, 43 F.3d 41, 45 (3rd Cir. 1994); United States v. Patty, 992 F.2d 1045, 1049 (10th Cir. 1993); United States v. Mullins, 971 F.2d 1138, 1147 (4th Cir. 1992); United States v. Arvanitis, 902 F.2d 489, 497 (7th Cir. 1990); United States v. Walker, 896 F.2d 295, 307 n. 26 (8th Cir. 1990); United States v. Barany, 884 F.2d 1255, 1260-1261 (9th Cir. 1989); United States v. Mitchell, 876 F.2d 1178, 1184 (5th Cir. 1989).

The government contends that Congress substantially broadened the scope of section 3663 when it enacted section 3663A in 1996, rendering these cases irrelevant because they deal with section 3663(b)(1), and not section 3663A(b)(1). Further, the government argues that our decision in United States v. Collins, 209 F.3d 1 (1st Cir. 1999), is directly on point, and requires us to conclude that the inclusion of attorneys' fees is authorized by the Act when legal expenses constitute losses reasonably foreseeable to the defendant.

This controversy, interesting and important as it may be, need not be resolved to dispose of the issue before us. Even if the

-19-

position asserted by Petit and Richard were correct, a decision we do not make, they could not prevail on this issue. Because defendants did not specifically object to the inclusion of attorneys' fees at sentencing, we could reverse the district court's restitution order under 18 U.S.C. § 3663A only if it constituted particularly "egregious" or "obvious" legal error. <u>Negron</u>, 212 F.3d at 672. Prior to this case, our circuit had not interpreted the language contained in section 3663(b)(1) and section 3663A(b)(1). While the majority of our sister circuits have held that, under this language, restitution cannot include consequential damages such as attorneys' fees, the law in this circuit was not "obvious" when the district court made its decision, and the district court's restitution order was not particularly "egregious" under the circumstances. We, therefore, affirm the district court's restitution order.

IV

Appellants' remaining claims have been considered but do not require discussion. We have stated previously that:

> [w]e understand the practical pressure on lawyers – especially in criminal cases – to resolve doubts in favor of including doubtful claims along with stronger ones. But cases with difficult issues now crowd the dockets. At least in opinion writing, the court's time is best reserved for colorable claims.

United States v. Collazo-Aponte, 216 F.3d 163, 207 (1st Cir. 2000), quoting United States v. Bennett, 75 F.3d 40, 49 (1st Cir. 1996).  We follow this principle  and address other issues raised by defendants (and co-defendant Roland Morin) in an unpublished disposition.

AFFIRMED.