# United States Court of Appeals
## For the First Circuit

No. 14-1671

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS LUIS ALVIRA-SANCHEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Ines McGillion, on brief for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Chief,
Appellate Division, Francisco A. Besosa-Martínez, Assistant United
States Attorney, and Rosa Emilia Rodríguez-Vélez, United States
Attorney, on brief for appellee.

October 30, 2015

**KAYATTA**, **Circuit Judge**.  Carlos Luis Alvira-Sanchez alleges that the district court in this case made several errors in accepting and entering his guilty plea.  Alvira-Sanchez made no objections to any of those purported errors at the time, nor did he thereafter seek to withdraw his plea, even after he was sentenced.  He now asks that we vacate the acceptance of his plea.  Although several of Alvira-Sanchez's claims of error are meritorious, no shortcoming in the district court's acceptance of his plea caused him any harm.  Accordingly, we deny Alvira-Sanchez's request for reversal.  At the same time, because the parties agree that Alvira-Sanchez is entitled to seek a sentencing reduction under Amendment 782 to the Drug Quantity Table of the United States Guidelines, we remand solely for consideration of that request.

## I.  Background

On October 24, 2013, law enforcement officers entered a residence located roughly 168 feet from a school to arrest Alvira-Sanchez on two outstanding warrants.  On entry, officers found, among other things, a loaded Zombie rifle, approximately 2.87 grams of cocaine, approximately 1.3486 grams of cocaine base, approximately 2.0247 grams of marijuana, and drug paraphernalia.  On October 30, 2013, Alvira-Sanchez was charged with four counts: (1) possession of a firearm in a school zone, in violation of 18 U.S.C. § 922(q); (2) possession of cocaine in a school zone, with

intent to distribute, in violation of 21 U.S.C. § 841; (3) possession of marijuana in a school zone, with intent to distribute, in violation of 21 U.S.C. § 841; and (4) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

On February 19, 2014, Alvira-Sanchez came before the court to enter a straight guilty plea--i.e., a plea not the product of a plea bargain--on all counts. After verifying Alvira-Sanchez's competence to plead, the court explained that pleading guilty waived the right to trial by jury, the presumption of innocence, the right to a public trial, and the right to remain silent. The court next listed the elements of each of the four charged crimes and verified Alvira-Sanchez's understanding. The court did not, however, expressly inform Alvira-Sanchez of his right to persist in a plea of not guilty. See Fed. R. Crim. P. 11(b)(1)(B).

Turning to the penalties, the court stated that "the gun counts may require a consecutive sentence." The court then described the penalties "regarding the drugs" as, in relevant part, "[i]mprisonment of not more than 20 years," "[s]upervised release of at least three years," and "the payment of a special monetary assessment," and the penalties "regarding the gun" as, in relevant part, "at least five years, statutory minimum; not more than life imprisonment," "supervised release that can go as high as five years," and "the payment of a special monetary assessment[.]" The

- 3 -

court concluded by explaining that parole would not be available, that the court was not bound by the recommendations of the United States Sentencing Guidelines ("USSG"), and that Alvira-Sanchez would serve a term of supervised release that "will never be more than five years."  The court did not, however, inform Alvira-Sanchez that any sentence imposed for count 1 (possession of a firearm in a school zone), up to a maximum of five years, was statutorily mandated to run consecutively to any other sentence, or that count 1 would carry its own concurrent term of supervised release and special monetary assessment.  After Alvira-Sanchez accepted the government's factual proffer, the court entered his plea and ordered a Presentence Investigation Report ("PSR").

The PSR as ultimately amended grouped counts 1–3 and calculated a total offense level of 14 for those counts.[1]  For criminal history, the PSR listed five prior arrests, including one arrest for pending criminal charges and three arrests for past dismissed charges.  The PSR also noted that Alvira-Sanchez had pled guilty to four unlisted juvenile offenses.  The PSR concluded that Alvira-Sanchez fell within Criminal History Category (CHC) I,

---

[1] The PSR treated count 1 as a specific offense characteristic of counts 2–3, pursuant to USSG § 3D1.2(c).  Although any term of imprisonment imposed under count 1 was statutorily required to run consecutively to all others, 18 U.S.C. § 924(a)(4), count 1 did not require that any term of imprisonment be imposed, and so it could be grouped with related counts for guidelines purposes.  See USSG § 3D1.1(b)(1), cmt. n.2.

corresponding to a recommended sentence of 15-21 months for grouped counts 1-3. Count 4 carried a mandatory minimum sentence of 60 months. It was mandatory that any sentences imposed for counts 1 and 4 run consecutively to all other sentences, and to each other.

Alvira-Sanchez appeared thereafter for sentencing. He requested a low-end guidelines sentence of 75 months--15 months for grouped counts 1-3, plus the mandatory consecutive 60-month sentence for count 4. The court granted his subsidiary request that it treat the pending charges listed in the PSR's criminal history section as allegations, but it declined to do the same for the previously dismissed charges, seeing "no logical, reasonable explanation, legal or factual or otherwise" as to why the charges had been dismissed. Looking at the entirety of the PSR's criminal history section, the court said that "you can tell a mile away that [Alvira-Sanchez] has been involved for a substantial part of his life in the business of drug dealing and firearms."

Turning to its obligation to sentence Alvira-Sanchez under 18 U.S.C. § 3553, the court said that "even though we have not mentioned 3553(a) by name, it is obvious that all this discussion surrounds 3553(a), the sentencing factors." Expressing concern for Puerto Rico's high crime rate and the "real need for deterrence of criminal conduct," the court sentenced Alvira-Sanchez to 6 months for count 1, 34 months for counts 2-3, and 60 months for count 4, with all sentences to be served consecutively

- 5 -

for a total of 100 months.  In addition, the court imposed concurrent terms of supervised release of three years (count 1), six years (count 2), four years (count 3), and five years (count 4).  Finally, the court imposed a $100 monetary assessment for each count, for a total of $400.  Unhappy with his sentence, Alvira-Sanchez now asks that we vacate the sentence and allow him to withdraw his plea, or that we remand for a new sentence.

## II.  Analysis

### A.  The Plea Colloquy

#### 1.  Standard of Review

Because Alvira-Sanchez raised no objection to his plea colloquy below, he bears the burden of showing: (1) that an error occurred; (2) that the error was clear or obvious; (3) that the error impaired his substantial rights; and (4) that the error "seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

#### 2.  The Consequences of Count 1

Before entering a guilty plea, a court must ensure that the defendant understands "any maximum possible penalty, including imprisonment, fine, and term of supervised release." Fed. R. Crim. P. 11(b)(1)(H).  Here, rather than explaining the consequences of the gun counts (counts 1 and 4) separately, the district court said merely, in relevant part, "[R]egarding the gun, the statutory

penalty is at least five years, statutory minimum; not more than life imprisonment . . . supervised release that can go as high as five years; plus the payment of a special monetary assessment that's consecutive."  The court accurately stated the penalties for possession of a firearm in furtherance of a drug trafficking crime (count 4).  See 18 U.S.C. § 924(c)(1)(A)(i)[2]; 18 U.S.C. § 3013(a)(2)(A); 18 U.S.C. § 3583(b)(1); 18 U.S.C. § 3559(a)(1). The court did not, however, indicate that possession of a firearm in a school zone (count 1) carried the potential for a separate term of imprisonment not more than five years, required to run consecutively, see 18 U.S.C. § 924(a)(4), and its own concurrent term of supervised release, see 18 U.S.C. § 3583(a).

The government argues that the court's statement that "the gun counts may require a consecutive sentence" was adequate notice, but Alvira-Sanchez is correct that nothing in that formulation served to inform him that the gun counts carried the potential for "separate multiple sentences rather than a single sentence, and that the consecutive nature of those sentences was mandatory as opposed to permissive, and that they must be consecutive not only to all non-gun counts, but also to each

_____

[2] Although 18 U.S.C. § 924(c)(1)(A)(i) does not explicitly state that it carries the possibility of a life sentence, its silence as to any maximum sentence creates an implicit maximum sentence of life.  See United States v. O'Brien, 560 U.S. 218, 241 (2010) (Stevens, J., concurring).

- 7 -

other." Failure to explain correctly the interaction of the consecutive sentences on the two counts was thus obviously erroneous. Cf. United States v. Santiago, 775 F.3d 104, 106–07 (1st Cir. 2014) (government conceded that failure to inform defendant that sentences must run consecutively was an obvious error).

That error, though, did not affect Alvira-Sanchez's substantial rights. Given that count 1 does not require any minimum sentence, see 18 U.S.C. § 924(a)(4), and that Alvira-Sanchez already knew he risked up to a 20-year term for counts 2–3 and a consecutive life sentence for count 4, there is no reason to think that the risk of an additional 5-year term would have affected Alvira-Sanchez's willingness to plead. He does not allege as much. See United States v. Romero-Galindez, 782 F.3d 63, 69 (1st Cir. 2015) (finding no plain error where district court understated the supervised release period by two years at the change of plea hearing because, inter alia, the discrepancy was "but a small fraction of the life-imprisonment penalty" defendant was facing).

The same analysis holds for the district court's failure to describe accurately count 1's term of supervised release. Alvira-Sanchez knew that he faced a potential term of supervised release under count 4 that would "never be more than five years." Because supervised release terms must run concurrently, see 18

- 8 -

U.S.C. § 3624(e), and because no authorized term of supervised release under 18 U.S.C. § 3583 exceeds five years, any term of supervised release under count 1 could not have increased Alvira-Sanchez's total exposure. Alvira-Sanchez nevertheless argues that the number of concurrent supervised release terms being served is consequential, as it could affect the consequences should he violate his conditions of release. Alvira-Sanchez fails, however, to allege that such an indirect and potential ramification of the plea would have affected his decision to plead guilty, had he been properly informed of count 1's concurrent supervised release term. Nor would such an allegation be remotely persuasive.

Nor did the failure to inform Alvira-Sanchez of count 1's potential for an added monetary assessment likely affect his decision to plead. The court mentioned a monetary assessment in connection with the gun charges and did not specify any dollar amount. Alvira-Sanchez elected to plead without knowing what his financial liability might be. It is not likely that the omission impaired Alvira-Sanchez's substantial rights because it is not likely that he would have reversed course had he known that he faced two assessments of unknown value in connection with the gun charges, rather than one.

### 3. The Right to Persist in Pleading Not Guilty

Alvira-Sanchez complains for the first time on appeal that the district court never in so many words confirmed that he

understood that, as Federal Rule of Criminal Procedure 11(b)(1)(B) states in a straightforward manner, he had "the right to plead not guilty, or having already so pleaded, to persist in that plea." Rather, the district court asked Alvira-Sanchez if he understood that he was waiving "the right that you have to put the government through the burden of proving you guilty beyond a reasonable doubt without you having to prove your innocence." Whether this description of the right was, by itself, an insufficient circumlocution or, instead, a practical elaboration that might stand on its own, we need not decide.[3] Rather, the transcript as a whole makes clear that Alvira-Sanchez knew that he was not compelled to persist in pleading guilty. Cf. United States v. Cotal-Crespo, 47 F.3d 1, 8 (1st Cir. 1995) (finding plea colloquy "adequate" when it was clear from context, inter alia, "that the defendants understood that they had the right to persist in their innocence and go to trial," but cautioning that "for the sake of judicial economy and fundamental fairness, the best way to ensure that Rule 11 is complied with is to explicitly comply with Rule 11").

Notably, the district court asked Alvira-Sanchez toward the conclusion of the colloquy, "Do you still want to plead?" thereby implying that it was still Alvira-Sanchez's choice whether

---

[3] The government offers no argument one way or the other.

- 10 -

or not to plead.  Even Alvira-Sanchez's brief on appeal implicitly concedes this point by arguing that the court's explanation at the hearing of the criminal charges against him affected his decision to plead guilty.  Accordingly, even if we were to assume that the lack of an express reference to the right to persist in a plea of not guilty was error, such an error could not have affected Alvira-Sanchez's substantial rights.  Cf. United States v. Borrero-Acevedo, 533 F.3d 11, 18 (1st Cir. 2008) ("It is defendant's burden" on plain error review to show that but for the error "he would otherwise not have pled guilty.  If the record contains no evidence in defendant's favor, his claim fails.").

B.    **The Monetary Assessment and Supervised  Release**

Alvira-Sanchez briefly argues that the three-year supervised release term and $100 monetary assessment sentences imposed for count 1 were contrary to statute.  18 U.S.C. § 924(a)(4) reads in relevant part, "Except for the authorization of a term of imprisonment of not more than 5 years made in this paragraph, for the purpose of any other law a violation of section 922(q) [possession of a firearm in a school zone] shall be deemed to be a misdemeanor."  Thus reading his § 922(q) count (count 1) to be a misdemeanor, Alvira-Sanchez asserts that the maximum permitted supervised release term under 18 U.S.C. § 3583(b)(3) is 1 year, and the maximum permitted monetary assessment under 18 U.S.C. § 3013(a)(1)(A)(iii) is $25.

But the statutory language is not as clear as Alvira-Sanchez contends. 18 U.S.C. § 3559(a)(4) classifies an offense as a Class D felony "if the maximum term of imprisonment authorized is less than ten years but five or more years." One could construe 18 U.S.C. § 924(a)(4) as establishing that a § 922(q) offense is a misdemeanor except where misdemeanor and felony are distinguished by their authorized terms of imprisonment. This may not be the most persuasive reading, but this circuit has never addressed the question. Some courts have taken Alvira-Sanchez's reading. See United States v. Rivera-Concepcion, No. 07-169 CCC, 2007 WL 1852608, at *2 n.1 (D.P.R. 2007); but see id. at *2 (stating amount of monetary assessment for § 922(q) violation as $100). Others, however, have at least implicitly understood a § 922(q) violation to constitute a Class D felony for sentencing purposes. See Hough v. United States, No. 3:13-cv-143-FDW, 2015 WL 127881, at *1 (W.D.N.C. 2015) (three years' supervised release for § 922(q) violation). The statute's imprecise language and the fact that other courts have fallen prey to the same error, if error indeed there was here, demonstrate that any misconstruction on the part of the district court was not obviously erroneous. Cf. United States v. Richard, 234 F.3d 763, 771 (1st Cir. 2000) (declining to resolve a question of statutory interpretation on plain error review because "the law in this circuit was not 'obvious'" when the district court imposed its sentence).

## C.    The Government's Factual Proffer

Alvira-Sanchez argues that it was plain error for the district court to accept his guilty plea despite the fact that the government proffered no facts showing that he possessed a firearm outside his residence.  See 18 U.S.C. § 922(q)(2)(B) (prohibition on possessing a firearm in a school zone does not apply "on private property not part of school grounds").  However, the question relevant to the sufficiency of the evidence in a plea proffer "is not whether a jury would, or even would be likely, to convict: it is whether there is enough evidence so that the plea has a rational basis in facts."  United States v. Gandia-Maysonet, 227 F.3d 1, 6 (1st Cir. 2000).  Many crimes are proved by reasonably probative circumstantial evidence, and a rational jury could conclude due to the nature of the seized gun and evidence of Alvira-Sanchez's involvement in the drug trade that he did not keep his gun dutifully at home.  Other juries appear to have inferred § 922(q) violations based on guns found at private residences.  See, e.g., United States v. Nieves-Castaño, 480 F.3d 597, 598–99 (1st Cir. 2007).

Even if the district court did commit error by accepting the government's proffer, the error was not obvious.  A proffer establishes a sufficient factual basis for a guilty plea if it touches all the elements of the crime.  See United States v. Piper, 35 F.3d 611, 615–16 (1st Cir. 1994) ("[The district court] need

not gratuitously explore points removed from the elements of the offense."). Alvira-Sanchez points to no circuit precedent establishing whether "possession outside the home" is an element of a § 922(q) offense, or whether "possession inside the home" is an affirmative defense. If the latter, then the government had no obligation to proffer evidence to rebut an anticipated defense. And even if the former, the law is sufficiently unsettled that any error in accepting the government's proffer was not obvious. Cf. Richard, 234 F.3d at 771 (no obvious error when law in circuit unsettled).

## D. Amendment 782

If a defendant is sentenced to a prison term based on a sentencing range that the Sentencing Commission later lowers, a district court may reduce the defendant's sentence if such a reduction is consistent with the Commission's policy statements. 18 U.S.C. § 3582(c)(2). Amendment 782, effective November 1, 2014, reduced by two levels the offense levels associated with certain drug quantities. The parties agree that Amendment 782 reduced Alvira-Sanchez's base offense level on his drug counts (counts 2–3) from 14 to 12. This amendment reduces Alvira-Sanchez's recommended sentencing range for grouped counts 1–3 from 15–21 months to 10–16 months. In light of the Sentencing Commission's policy statement authorizing a court to consider reducing a defendant's sentence if Amendment 782 reduces the guideline range

applicable to that defendant, see USSG § 1B1.10(a)(1), remand is appropriate, as both parties recognize.

**E.   Assignment on Remand**

Where there is reason to think that a judge will base sentencing determinations on unreliable or inaccurate information, remand to a different judge is warranted. See, e.g., United States v. Craven, 239 F.3d 91, 103 (1st Cir. 2001) (remand to different judge where original judge had reviewed off-record evidence); United States v. Curran, 926 F.2d 59, 64 (1st Cir. 1991) (same). Moreover, a case can be assigned to a different judge on remand if the original judge displayed a "deep-seated favoritism or antagonism that would make fair judgment impossible." Yosd v. Mukasey, 514 F.3d 74, 78 (1st Cir. 2008) (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)). The record evinces no such antagonism here. Alvira-Sanchez points to several purported indications of the district court's personal bias against him. However, none hold water.

First, Alvira-Sanchez raised no objection to the court's decision to call its own bailiff to testify at Alvira-Sanchez's initial suppression hearing. Second, the court's decision not to credit Alvira-Sanchez's testimony at that suppression hearing does not evince bias. Cf. Yosd, 514 F.3d at 75 (finding no error in the Board of Immigration Appeals' decision to remand an asylum applicant's case to an immigration judge who had previously found

him not to be credible).  Third, the district court's disapproval of Alvira-Sanchez's criminal history does not evince bias.  We have found it to be "within the district judge's discretion to find that the defendant's criminal history score did not adequately represent either the seriousness of his past criminal behavior or the likelihood of his recidivism."  United States v. Flores-Machicote, 706 F.3d 16, 22 (1st Cir. 2013).  Finally, the district court's expression of its views on the failings of Puerto Rico's court system was linked to an individualized consideration of Alvira-Sanchez's criminal history and so did not reflect unwillingness to consider Alvira-Sanchez's specific case.  See id. at 21–22.

Moreover, the record indicates that the district court did consider Alvira-Sanchez's unique circumstances.  At the change-of-plea hearing, the court demanded an exact drug quantity from defense counsel: "I will expect some sort of lab result at the time of sentencing that tells how much of each substance you have. . . .  I'm not going to guess about this.  I need to know."  When considering Alvira-Sanchez's objections to the PSR's criminal history section at the sentencing hearing, the court insisted on considering each past incident separately: "Wait.  Wait.  Let's go one by one. . . .  Let's not deal in wholesale here."  Finally, after accurately walking through the applicable sentencing calculations based on Alvira-Sanchez's individualized PSR, the

court expressed sympathy for Alvira-Sanchez: "I see in [him] also a young individual, a person who had perhaps no guidance. I feel sorry for that. But I have to make this distasteful exercise."

Taken together, the record gives no reason to believe that the district judge is incapable of fairly hearing Alvira-Sanchez's request for a sentencing reduction on remand.

### III. Conclusion

We affirm the conviction based on the entry of a guilty plea and remand solely for consideration of a sentence reduction under Amendment 782.